IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| SHAWNA BATES, a.k.a. SHAWNA SMITH, <br><br> Plaintiff, <br><br> vs. <br><br> J P MORGAN CHASE BANK, N.A., <br><br> Defendant. | CIVIL ACTION FILE NO.: <br> 4-12-cv-43 (CDL) |

## COMPLAINT

COMES NOW the Plaintiff, Shawna Bates, and shows as follows:

### JURISDICTION AND VENUE

1.

The Plaintiff is a citizen of Georgia.

2.

J P Morgan Chase Bank, known as Chase, is a foreign corporation doing substantial business in this district and division, its registered agent for service of process being C T Corporation System, 1201 Peachtree Street, N.E., Atlanta, Georgia 30361.

3.

Jurisdiction is proper under 28 USC § 1332 in that there is diversity of citizenship.

4.

Jurisdiction is also proper under 28 USC § 1331 in that one of the counts herein involves a federal question.

5.

Venue is proper under 28 USC § 1391 (a)(2) in that a substantial part of the events or omissions giving rise to the claims herein occurred in this district.

6.

Venue is also proper in this district under 28 USC § 1391 (b)(2) in that a substantial part of the events or omissions giving rise to the claims herein occurred in this district.

7.

The amount in controversy exceeds $75,000.00.

OPERATIVE FACTS

8.

On May 30, 2008, Shawna executed a deed to secure debt to Mers as nominee for Synovus Mortgage Corporation conveying a security interest in her home at 145 Culpepper Drive, Cataula, Georgia 31804. This loan was subsequently assigned to Chase.

9.

On the same date, Plaintiff executed a promissory note to Synovus in the amount of $151,092.00.

10.

This loan was a federally insured FHA loan.

11.

Shawna fell behind on her payments for June, July, and August of 2011.

12.

On September 6, 2011, Shawna mailed her June, July, and August of 2011 payments via overnight mail to Chase in the amount of $3,495.00. Chase signed for it on September 7, 2011 and the money was electronically transferred out of Shawna's bank account on September 15, 2011.

13.

On November 7, 2011, Shawna sent her check via overnight mail to Chase for the payments due for September, October, November, and December of 2011.

14.

This check was in the amount of $4,660.00.

15.

By letter dated November 9, 2011, Chase returned Shawna's check for $4,660.00.

16.

On November 28, 2011, Shawna sent her check for $4,660.00 via overnight mail back to Chase.

17.

By letter dated December 1, 2011, Chase again returned Shawna's check for $4,660.00 telling Shawna that "certified funds are required."

18.

On December 15, 2011, Shawna's bank sent Shawna's payment of $4,660.00 by electronic payment.

19.

On December 21, 2011, Chase electronically returned Shawna's payment of $4,660.00.

20.

Shawna has called Chase repeatedly in an effort to straighten out her account with no success.

21.

For example, on December 5, 2011, Shawna was on the phone with Chase off and on for 6 hours in an effort to straighten out her account with no success.

22.

On December 24, 2011, Christmas Eve, Shawna received a letter from Chase's lawyer dated December 21, 2011 stating that her home would be foreclosed on at a foreclosure sale to be held on February 7, 2012. Attached as Exhibit 1.

23.

A friend of Shawna's showed her a notice of foreclosure which was running in the newspaper during December of 2011 where Shawna's home was being advertised for foreclosure on the courthouse steps for January 3, 2012. Attached as Exhibit 2.

24.

On December 22, 2011, Shawna called Chase and was on hold for about 45 minutes and was disconnected.

25.

On December 22, 2011, Shawna wrote Chase a detailed letter attaching as Exhibits proof of payment in an effort to straighten out her account. Attached as Exhibit 3 is that letter with the attachments

26.

This letter is a qualified written request under RESPA.

27.

Shawna never received an acknowledgement of this letter from Chase as required under RESPA.

28.

To date, Shawna has never received a response to this letter.

29.

Shawna called Chase and Chase's lawyers to find out what was going on and to try and straighten out her account – again, with no success.

30.

Shawna learned that her home was not foreclosed on January 3, 2012.

31.

Shawna subsequently saw another notice of foreclosure running in the newspaper during the month of January, 2012 to be sold at the courthouse steps on February 7, 2012.

32.

Shawna again called Chase and was told by Chase that most likely the sale of February 7, 2012 would be postponed so Chase could "research" the matter.

33.

Shawna had been told on numerous occasions that Chase was "researching" the matter.

34.

Shortly after January 25, 2012, Shawna received a letter from Chase saying her account was in default and had been referred to foreclosure on September 8, 2011.

35.

This letter said if Shawna wanted to reinstate her loan that she needed to contact Chase's lawyers to get a reinstatement quote. Attached as Exhibit 4.

36.

Shawna contacted Chase's lawyers and shortly after January 31, 2012, received a letter from Chase's lawyers saying she would need to send $12,170.18 in the form of a cashier's check so that it would be received no later than 5:00pm CST on February 6, 2012. Attached as Exhibit 5.

37.

Chase was not giving Shawna credit for the $3,495.00 which Chase received and never returned.

38.

Chase was also charging Shawna attorneys' fees and other charges which Shawna did not owe.

39.

Shawna admits that she owes late fees to Chase and always has been ready to pay them if Chase would tell her how much they are and give her credit for the $3,495.00 for her June, July, and August of 2011 payments.

40.

Shortly after February 3, 2012, Shawna received a letter from Chase's lawyers advising that her home would be shortly foreclosed on and stating the conditions on which Shawna could possibly remain in her home for a while. Attached as Exhibit 6.

41.

Shawna's loan was a FHA insured loan subject to applicable HUD regulations.

42.

One HUD regulation, 24 CFR § 203.604, requires that the mortgagee must have a face-to-face interview with Shawna concerning her mortgage, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the loan are unpaid.

43.

The face-to-face meeting requirement under 24 CFR § 203.604 is mandatory if the mortgaged property is within 200 miles of the mortgagee, its servicer, or a branch office of either.

44.

Chase has a branch office within 200 miles of Shawna's home.

45.

24 CFR § 203.604 also requires that the mortgagee must make an actual physical trip to Shawna's home to discuss her mortgage.

46.

24 CFR § 203.604 requires at a minimum one letter being sent to the mortgagor attempting to arrange a face-to-face meeting. This letter must be sent to Shawna certified by the Postal Service as having been dispatched.

47.

Chase did not have a face-to-face interview with Shawna; nor did it make reasonable efforts to arrange such an interview; nor did it send the required certified mail letter; nor did it send someone to her home to arrange a face-to-face interview.

48.

Compliance with the above HUD regulations is a condition precedent to being able to foreclose as they are made terms of the contract between Shawna and Chase.

49.

Chase intentionally set out to harm Shawna knowing that it had no right to foreclose on her home but did it anyway.

50.

Shawna has sustained monetary loss as a result of Chase's wrongful acts.

51.

Shawna has sustained mental and physical injury as a result of Chase's acts.

52.

Shawna is suffering from depression, crying spells, headaches, diarrhea, and cannot sleep as a result of Chase's actions.

53.

After the foreclosure ads began running in the paper, Shawna has had a lot of people riding by her property and staring at her home.

54.

Because of this, Shawna put up "NO TRESPASSING" signs on her property. These signs are very visible.

55.

On Sunday, February 19, 2012, Shawna's children saw a man on Shawna's property hiding behind a tree and taking pictures of Shawna's home.

56.

Shawna approached the man and he told her he had been sent there by Chase to take pictures.

57.

Shawna and her children were very upset with the man sneaking around taking pictures.

58.

The man Chase sent had to have seen the "NO TRESPASSING" signs before he came onto her property.

## COUNT ONE

## RESPA VIOLATIONS

59.

Chase has failed to comply with 12 USC § 2605 (e) in that it failed to property respond to Shawna's qualified written requests and it reported adverse credit information to the credit bureaus in violation of RESPA.

60.

Chase violated 12 USC § 2605 (k) in that it did not take timely action to respond to Shawna's pleas to correct her account, refused to properly investigate its errors, and failed to follow the standard servicer's duties and standards of care.

61.

Because of these and other violations of RESPA, Chase is liable for all actual damages to Shawna, including but not limited to emotional damages.

## COUNT TWO

## CONVERSION

62.

Shawna shows that Chase has converted her June, July, and August of 2011 payments in the sum of $3,495.00 plus interest in that they have refused to credit her account with this sum of money.

63.

Shawna has repeatedly demanded that her account with Chase be credited for this money and Chase has refused to do so.

64.

Chase has committed the tort of conversion.

## COUNT THREE

## BREACH OF CONTRACT

65.

Chase has breached the terms of its contracts with Shawna – note and security deed.

## COUNT FOUR

## WRONGFUL FORECLOSURE

66.

Chase has intentionally attempted to foreclose on Shawna's home by running foreclosure notices in the newspaper knowing that Shawna was not in default on her loan.

67.

Chase has caused Shawna extreme emotional distress, worry, and fear of losing her home among other damages.

68.

Chase has committed the tort of wrongful foreclosure.

## COUNT FIVE

## TRESPASS

69.

Chase, through its agent, trespassed on Shawna's property.

## COUNT SIX

## ATTORNEYS' FEES AND EXPENSES

70.

Chase has acted in bad faith, has been stubbornly litigious, and has caused Shawna unnecessary trouble and expenses entitling Shawna to recover attorneys' fees and expenses under O.C.G.A. § 13-6-11.

### COUNT SEVEN

### PUNITIVE DAMAGES

71.

Chase is liable for punitive damages for its willful, malicious, and reckless conduct and specific intent to cause harm to Shawna.

WHEREFORE Plaintiff prays that she recover the following:

(1) Actual damages;

(2) Emotional damages;

(3) General damages;

(4) Damages to credit reputation;

(5) Expenses of litigation, including attorneys' fees;

(6) Punitive damages;

(7) Such other damages as are appropriate in this case;

(8) Trial by Jury.

This 21st day of February, 2012.

                                                             CHARLES A. GOWER, P.C.

                                                             */s/ Charles A. Gower*
                                                             CHARLES A. GOWER
                                                             Georgia Bar No. 303500
                                                            TERESA T. ABELL
                                                             Georgia Bar No. 000383
                                                            MIRANDA J. BRASH
                                                            Georgia Bar No. 475203

1425 Wynnton Road
P. O. Box 5509
Columbus, GA 31906
(706)324-5685                                                  *Attorneys for Plaintiff*