## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## COLUMBUS DIVISION

| | | |
|---|---|---|
| SHAWNA BATES, a.k.a. | ) | |
| SHAWNA SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO.: 4:12-CV-43 (CDL) |
| | ) | |
| | ) | |
| J P MORGAN CHASE BANK, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S
## MOTION TO DISMISS

COMES NOW PLAINTIFF, Shawna Bates, and files her Response in Opposition to
Defendant JPMorgan Chase Bank's ("Chase") Motion to Dismiss Plaintiff's Complaint.
Plaintiff's Complaint states viable claims against Defendant Chase, and Plaintiff respectfully
requests that the Court deny Defendant's Motion to Dismiss.

## STATEMENT OF FACTS

On May 30, 2008, Plaintiff Shawna Bates executed a deed to secure debt to MERS as
nominee for Synovus Mortgage Corporation conveying a security interest in her home at 145
Culpepper Drive, Cataula, Georgia 31804. This loan was subsequently assigned to Defendant
JPMorgan Chase.  (Complaint at ¶ 8).  On the same date, Shawna also executed a promissory
note to Synovus in the amount of $151,092.00.  (*Id*. at ¶ 9).  This loan was a federally insured
FHA loan. (*Id*. at ¶ 10).

Shawna fell behind on her payments for June, July, and August of 2011.  (*Id*. at ¶ 11).
On September 6, 2011, Shawna mailed her June, July, and August of 2011 payments via
overnight mail to Chase in the amount of $3,495.00. Chase signed for it on September 7, 2011

1

and the money was electronically transferred out of Shawna's bank account on September 15, 2011. (*Id.* at ¶ 12; Exhibit 3 to Complaint).

On November 7, 2011, Shawna sent her check in the amount of $4,660.00 via overnight mail to Chase for the payments due for September, October, November, and December of 2011. (*Id.* at ¶¶ 13-14).  By letter dated November 9, 2011, Chase returned Shawna's check for $4,660.00.  (*Id.* at ¶ 15).  On November 28, 2011, Shawna again sent her check for $4,660.00 via overnight mail back to Chase.  (*Id.* at ¶ 16).  By letter dated December 1, 2011, Chase again returned Shawna's check for $4,660.00 telling Shawna that "certified funds are required."  (*Id.* at ¶ 17).  On December 15, 2011, Shawna's bank sent Shawna's payment of $4,660.00 by electronic payment.  (*Id.* at ¶ 18).  On December 21, 2011, Chase electronically returned Shawna's payment of $4,660.00.  (*Id.* at ¶ 19).

Shawna has called Chase repeatedly in an effort to straighten out her account with no success.  (*Id.* at ¶ 20).  For example, on December 5, 2011, Shawna was on the phone with Chase off and on for 6 hours in an effort to straighten out her account with no success. (*Id.* at ¶ 21).

On December 24, 2011, Christmas Eve, Shawna received a letter from Chase's lawyer dated December 21, 2011 stating that her home would be foreclosed on at a foreclosure sale to be held on February 7, 2012.  (*Id.* at ¶ 22; Exhibit 1 to Complaint).

A friend of Shawna's showed her a notice of foreclosure which was running in the newspaper during December of 2011 where Shawna's home was being advertised for foreclosure on the courthouse steps for January 3, 2012.  (*Id.* at ¶ 23; Exhibit 2 to Complaint).

On December 22, 2011, Shawna called Chase and was on hold for about 45 minutes and was disconnected.  (*Id.* at ¶ 24).  On December 22, 2011, Shawna wrote Chase a detailed letter attaching as Exhibits proof of payment in an effort to straighten out her account.  (*Id.* at ¶ 25;

Exhibit 3 to Complaint).  This letter is a qualified written request under RESPA.  (*Id*. at ¶ 26).

To date, Shawna has never received a response to this letter (*Id*. at ¶ 28)  that satisfies RESPA.

Shawna called Chase and Chase's lawyers to find out what was going on and to try and straighten out her account – again, with no success.  (*Id*. at ¶ 29).

Shawna learned that her home was not foreclosed on January 3, 2012. (*Id*. at ¶ 30).

Shawna subsequently saw another notice of foreclosure running in the newspaper during the month of January, 2012 to be sold at the courthouse steps on February 7, 2012. (*Id*. at ¶ 31). Shawna again called Chase and was told by Chase that most likely the sale of February 7, 2012 would be postponed so Chase could "research" the matter.  (*Id*. at ¶ 32).  Shawna had been told on numerous occasions that Chase was "researching" the matter.  (*Id*. at ¶ 33).

Shortly after January 25, 2012, Shawna received a letter from Chase saying her account was in default and had been referred to foreclosure on September 8, 2011. (*Id*. at ¶ 34).  This letter said if Shawna wanted to reinstate her loan that she needed to contact Chase's lawyers to get a reinstatement quote.  (*Id*. at ¶ 35; Exhibit 4 to Complaint).  Shawna contacted Chase's lawyers and shortly after January 31, 2012, received a letter from Chase's lawyers saying she would need to send $12,170.18 in the form of a cashier's check so that it would be received no later than 5:00pm CST on February 6, 2012.  (*Id*. at ¶ 36; Exhibit 5 to Complaint).

Chase was not giving Shawna credit for the $3,495.00 which Chase received and never returned. (*Id*. at ¶ 37).  Chase was also charging Shawna attorneys' fees and other charges which Shawna did not owe.  (*Id*. at ¶ 38).  Shawna admits that she owes late fees to Chase and always has been ready to pay them if Chase would tell her how much they are and give her credit for the $3,495.00 for her June, July, and August of 2011 payments.  (*Id*. at ¶ 39).

Shortly after February 3, 2012, Shawna received a letter from Chase's lawyers advising that her home would be shortly foreclosed on and stating the conditions on which Shawna could possibly remain in her home for a while. (*Id*. at ¶ 40; Exhibit 6 to Complaint).

Shawna's loan was a FHA insured loan subject to applicable HUD regulations. (*Id*. at ¶ 41). One HUD regulation, 24 CFR § 203.604, requires that the mortgagee must have a face-to-face interview with Shawna concerning her mortgage, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the loan are unpaid. (*Id*. at ¶ 42). The face-to-face meeting requirement under 24 CFR § 203.604 is mandatory if the mortgaged property is within 200 miles of the mortgagee, its servicer, or a branch office of either. (*Id*. at ¶ 43). Chase has a branch office within 200 miles of Shawna's home. (*Id*. at ¶ 44). 24 CFR § 203.604 also requires that the mortgagee must make an actual physical trip to Shawna's home to discuss her mortgage. (*Id*. at ¶ 45). 24 CFR § 203.604 requires at a minimum one letter being sent to the mortgagor attempting to arrange a face-to-face meeting. This letter must be sent to Shawna certified by the Postal Service as having been dispatched. (*Id*. at ¶ 46). Chase did not have a face-to-face interview with Shawna; nor did it make reasonable efforts to arrange such an interview; nor did it send the required certified mail letter; nor did it send someone to her home to arrange a face-to-face interview. (*Id*. at ¶ 47). Compliance with the above HUD regulations is a condition precedent to being able to foreclose as they are made terms of the contract between Shawna and Chase. (*Id*. at ¶ 48).

Chase intentionally set out to harm Shawna knowing that it had no right to foreclose on her home but did it anyway. (*Id*. at ¶ 49). Shawna has sustained monetary loss as a result of Chase's wrongful acts. (*Id*. at ¶ 50). Shawna has sustained mental and physical injury as a result

of Chase's acts.  (*Id*. at ¶ 51).  Shawna is suffering from depression, crying spells, headaches, diarrhea, and cannot sleep as a result of Chase's actions.  (*Id*. at ¶ 52).

After the foreclosure ads began running in the paper, Shawna has had a lot of people riding by her property and staring at her home.  (*Id*. at ¶ 53).  Because of this, Shawna put up "NO TRESPASSING" signs on her property. These signs are very visible.  (*Id*. at ¶ 54).  On Sunday, February 19, 2012, Shawna's children saw a man on Shawna's property hiding behind a tree and taking pictures of Shawna's home. (*Id*. at ¶ 55).  Shawna approached the man and he told her he had been sent there by Chase to take pictures.  (*Id*. at ¶56).  Shawna and her children were very upset with the man sneaking around taking pictures.  (*Id*. at ¶ 57).  The man Chase sent had to have seen the "NO TRESPASSING" signs before he came onto her property.  (*Id*. at ¶ 58).

## ARGUMENT AND CITATION OF AUTHORITY

### I.    Applicable Standard

In deciding a Rule 12(b)(6) motion, the Court construes the Plaintiffs' Complaint in the light most favorable to Plaintiffs and accepts all well-pled facts as true.  *Speaker v. U.S. Dept. of Hlth. & Hmn. Svcs. Ctrs. for Dis. Contrl.* 623 F.3d 1371, 1379 (11th Cir. 2010).  A Complaint does not need detailed factual allegations, but only enough to raise the right to relief above a speculative level.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A Complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face.  *Id*.  A claim has "facial plausibility" if the factual content allows the Court to draw the reasonable inference that the Defendant is liable for the misconduct alleged.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  This standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal

evidence of' the necessary element.'"  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295-96 (11th

Cir. 2007).

II.     **Plaintiff Has Stated a Viable Claim under RESPA**

    A.   Defendant's Response to Plaintiff's QWR Did Not Comply With RESPA.

    Defendant first contends that Plaintiff's RESPA claim fails because Defendant alleges

that its letter of January 25, 2012 (Exhibit 4 to Plaintiff's Complaint) is a sufficient response to

Plaintiff's "Qualified Written Request" or "QWR" (Exhibit 3 to Plaintiff's Complaint) under

RESPA.  However, a review of Defendant's January 25, 2012 letter to Plaintiff reveals that

Defendant did not provide a response to Plaintiff's inquiry about her account that was adequate

under RESPA.

    The crux of the problem with Shawna's account begins with the fact that Shawna

transferred $3,495.00 by electronic transfer to JPMorgan Chase **on September 15, 2011**, yet

Chase refused to give her credit for this amount and then, subsequently, also refused to accept

her payments for the remaining payments on her account.

    In her QWR, (Exhibit 3 to Complaint), Plaintiff clearly pointed out that she had paid

$3,495.00 to Chase on **September 15, 2011**, which was paid by **electronic transfer**.[1]  Plaintiff

states in her letter to Chase, "I have never received credit for this amount which was paid by

electronic transfer."  (Exhibit 3 to Complaint).  Shawna provided to Chase a copy of her bank

statement with her QWR showing this electronic transfer from her Wells Fargo checking account

to Chase on September 15, 2011 in the amount of $3,495.00.  A handwritten notation by a Wells

---

[1]  The bank statement attached to Plaintiff's QWR and to the Complaint (Exhibit 3 to Complaint) shows that on September 9, 2011, Shawna had an "Ending Daily Balance" of $3,966.71. However, an entry on September 12, 2011 states, "NSF Return Item Fee for item $3,495.00 09/09 Jpmchase Bank NA." (It appears that there was a sufficient amount in the account to cover the $3,495.00 on September 9, 2011.) Then, on September 15, 2011, the bank statement shows a transfer of $3,495.00 from Shawna's account to Jpmorgan Chase NA.

Fargo bank officer on the copy of the bank statement provided to Chase notes that this transfer on September 15, 2011 from Shawna's account to JPMorgan Chase was "processed as an electronic item." (Exhibit 3 to Complaint). There is even an arrow drawn on the bank statement to point to the specific entry on September 15, 2011. (Exhibit 3 to Complaint).

Yet nowhere in Defendant Chase's letter dated January 25, 2012 does Chase acknowledge that it received Shawna's $3,495.00 payment by electronic transfer on September 15, 2011. Chase simply ignores this payment.[2] (Exhibit 4 to Complaint). Chase does not even mention the payment on September 15, 2011, much less explain to Shawna why Chase did not give her credit for the payment.

The Eleventh Circuit has emphatically held that "RESPA is a consumer protection statute . . . . As a consumer protection statute, [RESPA] must be construed liberally in order to best serve Congress' intent." *McLean v. GMAC Mortg. Corp.,* C.A. No. 06-22795, 2008 U.S. Dist. LEXIS 36143 at *33 (S.D. Fla. May 2, 2008) (quoting *Hardy v. Regions Mortg., Inc.,* 449 F.3d 1357 (11th Cir. 2006)) (internal quotations and additional citations omitted). Plaintiff has alleged that her loan is a federally-related mortgage subject to RESPA and that she sent at least one qualified written request ("QWR") to Defendant, but that Plaintiff did not receive a response that complies with RESPA. *See* 12 U.S.C. § 2605(e).

---

[2]  Even to this day, Defendant Chase continues to ignore Plaintiff's September 15, 2011 payment of $3,495.00 to JPMorgan Chase. In its Motion to Dismiss, Defendant Chase tells this Court that Shawna's bank statement shows that on September 12, 2011, a payment to Chase in the amount of $3,495.00 was marked "returned" and "unpaid," (Def. Motion to Dismiss at p. 4), and that Shawna was assessed a $35.00 "Return Item Fee" for the $3,495 payment. (*Id.*). Yet Defendant intentionally omits to point out to the Court that on the identical bank statement, a mere 4 lines down from the $35.00 assessment, is the electronic payment of $3,495.00 from Shawna to JPMorgan Chase Bank which went through via electronic transfer. It is highly misleading for Chase to argue or imply to this Court that Shawna did not make the $3,495.00 payment in September, 2011 when the very bank statement on which Chase is relying for its arguments shows this payment being made on September 15, 2011. (Exhibit 3 to Complaint).

Defendant does not dispute that it received from Plaintiff a "qualified written request," but rather argues that Plaintiff's claim must fail because Defendant believes it sufficiently responded to Plaintiff's inquiries.  This argument fails.

Under RESPA, upon receipt of a "qualified written request" from a borrower, section 2605(e)(2) of the statute requires a loan servicer take certain action within 60 days, ***which after conducting a thorough investigation of the borrower's account***, may include:

> Provid[ing] the borrower with a written explanation or clarification that includes . . . (C)(i) ***information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer***; and (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605 (e)(2) (emphasis added).  *See Woods v. Greenpoint Mortgage Funding, Inc.,* C.A. No. 2:09-1810, 2010 U.S. Dist. LEXIS 41492 at *20 (E.D. Cal. Apr. 28, 2010) (although plaintiff admitted defendant responded to his written requests, allegations "that the varied responses and documentary evidence show that the defendants are providing him with false and misleading information" sufficed to state valid RESPA claim); *Diamond v. One West Bank,* C.A. No. cv-09-1593, 2010 U.S. Dist. LEXIS 50627 at *11 (D. Ariz. Apr. 29, 2010) (denying motion to dismiss where servicer's "only response was to send a copy of [plaintiff's] payment history. This provided no information as to the current status of his loan agreement which plaintiff had requested); *Ortega v. Wells Fargo Bank,* C.A. No. 09-cv-1531, 2010 U.S. Dist. LEXIS 16563 (S.D. Cal. Feb. 23, 2010) (holding plaintiff who had alleged that servicer responded, but did not fully provide requested information, sufficiently pled RESPA claim); *Ramanujam v. Reunion Mortgage, Inc.,* C.A. No. 5:09-cv-03030, 2010 U.S. Dist. LEXIS 14543 at *13-15 (N.D. Cal. Feb. 19, 2010) (holding plaintiff alleging servicer "failed to conduct an investigation and failed to provide the requested information" adequately pled a RESPA violation); *Anderson v. Barclays*

*Capital Real Estate, Inc.,* C.A. No. 3:09-cv-2335, 2010 U.S. Dist. LEXIS 68327 at *17 (N.D. Ohio June 18, 2010)(plaintiff adequately pled a RESPA claim where she alleged that servicer's response "[did] not meaningfully respond to several of her requests.").

Shawna's QWR requests information about why Chase did not give her credit for her payment on September 15, 2011 of $3,495.00. Chase did not offer any explanation as to why it did not give her credit for this amount on her account. Chase did not address the September 15, 2011 payment at all. Therefore, Chase's response to Shawna's inquiry was insufficient and did not comply with RESPA.

A reasonable person would not find that this letter responded to Plaintiff's inquiry as to what happened to her September 15, 2011 payment of $3,495.00 for which she never received credit on her account. *See e.g., McLean v. GMAC Mortg. Corp.,* C.A. No. 06-22795, 2008 U.S. Dist. LEXIS 36143, *12-13 (S.D. Fla. May 2, 2008); *Holland v. GMAC Mortg. Corp.,* C.A. No. 03-2666, 2006 U.S. Dist. LEXIS 25723, *21 (D. Kan. Apr. 26, 2006); *Wright v. Litton Loan Servicing LP,* C.A. No. 05-02611, 2006 U.S. Dist. LEXIS 15691, *7 (E.D. Pa. Apr. 4, 2006).

The Eleventh Circuit district courts have consistently held that whether a servicer's correspondence satisfies the requirements of section 2605(e) in that it actually responds to the borrower's questions ***is a genuine issue of material fact and is a question for jury determination***. *See McLean,* 2008 U.S. Dist. LEXIS 36143 at *28-29; *Rawlings v. Dovenmuehle Mortg., Inc.,* 64 F. Supp. 2d 1156, 1161-63 (M.D. Ala. 1999). Despite Defendant's claim that it responded to Plaintiff's QWR by its letter of January 25, 2012, whether or not Defendant ***actually substantively answered Plaintiff's inquiry,*** as required under RESPA, is a question of fact not appropriate for dismissal as a matter of law. Furthermore, the fact that Defendant itself believes it sufficiently addressed all of Plaintiff's questions regarding her account is irrelevant—

there is no such subjective belief standard in determining whether a loan servicer has met the requirements of section 2605(e) under RESPA.  *See Holland v. GMAC Mortg. Corp.,* C.A. No. 03-2666, 2006 U.S. Dist. LEXIS 25723, *24 (D. Kan. 2006).  Thus, it is clear that there are genuine issues of material fact concerning whether Defendant's correspondence in this case satisfied the requirements of RESPA, Section 2605(e); therefore, Defendant's motion to dismiss as to this claim should be denied.  Plaintiff has adequately stated a claim that Defendant violated RESPA by failing to properly provide a response to Plaintiff's inquiries in her QWR.

      B.  Plaintiff Has Sufficiently Pled Violations of 12 U.S.C. § 2605(k).

      Defendant correctly points out that 12 U.S.C. § 2605(k) became effective on January 21, 2012.  However, Defendant is incorrect in arguing that none of its actions in violation of subsection (k) arose after January 21, 2012.  As shown in Plaintiff's Complaint, Defendant's conduct in failing to properly service Plaintiff's account, in failing to give Plaintiff credit for her payment of $3,495.00 made on September 15, 2011, and in failing to follow standard servicer's duties and standards of care, continued after January 21, 2012.  (*See* Complaint at ¶¶ 34-58).  In fact, to this day, Defendant refuses to credit Plaintiff's account with the $3,495.00 payment made on September 15, 2011, and Defendant apparently is arguing to this Court that Plaintiff did not make this payment on September 15, 2011, despite the payment appearing on Plaintiff's bank statement to which Defendant repeatedly refers the Court.  (Def. Motion to Dismiss at pp. 3-4, 10-11).

      Defendant did not provide any response to Plaintiff's December 22, 2011 QWR until after January 21, 2012.  (Exhibits 3-4 to Complaint).  And even in its January 25, 2012 letter, Defendant utterly failed to respond to Plaintiff's inquiry as to her September 15, 2011 payment of $3,495.00.  Additionally, in the January 25, 2012 letter, Chase referred Plaintiff to Chase's

agents—its foreclosure lawyers—for information as to her loan. (Complaint at ¶¶ 34-35). Plaintiff's contact with Chase's agents occurred after January 21, 2012, when 12 U.S.C. § 2605(k) was in effect. And Chase's agents falsely told Shawna an incorrect payment amount necessary to reinstate her loan, which amount did not give her credit for her $3,495.00 payment and also charged her attorney fees and other charges which she did not owe. (Complaint at ¶¶ 36-38). These actions violated 12 U.S.C. § 2605(k) after its effective date.

### III.   **Plaintiff Has Sufficiently Stated A Claim for Conversion**.

Defendant's motion to dismiss Plaintiff's claim for conversion again hinges on Defendant's false premise that Plaintiff did not make a payment of $3,495.00 on September 15, 2011. Defendant tells this Court that Exhibit 3 to the Complaint "clearly shows" that a $3,495.00 payment to Chase was returned to Plaintiff's bank account **on September 12, 2011**. (Def. Motion to Dismiss at p. 10). Exhibit 3 does show that transaction on September 12, 2011. And Plaintiff was assessed a $35.00 "Return Item Fee" on September 12, 2011. But for some reason that Plaintiff cannot fathom, Defendant refuses to look 4 lines down on the identical bank statement, which clearly shows a payment of $3,495.00 to JPMorgan Chase **on September 15, 2011**. (Exhibit 3 to Complaint). When Shawna sent a copy of this bank statement to Chase, along with her QWR letter dated December 22, 2011, Shawna explicitly pointed out to Chase the payment made on **September 15, 2011** and even drew an arrow to the specific line item transaction. (Exhibit 3 to Complaint).

Chase stubbornly refuses to acknowledge this payment to this day, arguing that Plaintiff "cannot establish that Chase converted her September 6, 2011 payment because Exhibit 3 explicitly shows that Chase did not accept the payment." (Def. Motion to Dismiss at p. 10). Exhibit 3 does show that a payment did not go through on September 12, 2011, but it also shows

that a payment of $3,495.00 **did** go through on September 15, 2011.  (Exhibit 3 to Complaint).

Plaintiff's claim for conversion alleges that Chase "converted her June, July, and August of 2011

payments in the sum of $3,495.00 plus interest in that they have refused to credit her account

with this sum of money."  (Complaint at ¶ 62).  Plaintiff alleged that this money—her June, July,

and August of 2011 payment—was "electronically transferred out of Shawna's bank account on

September 15, 2011."  (Complaint at ¶ 12).  Shawna further alleged that she repeatedly

demanded that her account with Chase be credited for this money and that Chase refused to do

so.  (Complaint at ¶ 63, and Exhibit 3 to Complaint).

Conversion is "[a]ny distinct act of dominion wrongfully asserted over another's property

in denial of his right, or inconsistent with it." *Maryland Cas. Ins. Co. v. Welchel*, 257 Ga. 259,

261 (1987).  It is sufficient if the defendant wrongfully assumes dominion over the property

inconsistent with the owner's right.  *Id.*  One way to establish a conversion where the defendant

came into possession of the plaintiff's property lawfully is to show "(1) title to the property or

the right of possession, (2) actual possession in the other party, (3) demand for return of the

property, and (4) refusal by the other party to return the property." *Trey Inman & Assoc., P.C. v.

Bank of America, N.A.*, 306 Ga. App. 451, 457 (2010).

Plaintiff alleged that she made a payment of $3,495.00 to Chase on September 15, 2011.

(Complt. at ¶¶ 12, 62, 63).  Although Defendant came into possession of Plaintiff's property

lawfully, Defendant did not properly apply the payment of $3,495.00 toward Plaintiff's account.

(Complt. at ¶ 62; Exhibit 4 to Complt.).  Plaintiff demanded that Defendant Chase correct its

errors on Plaintiff's account and properly apply Plaintiff's payments to her loan account.

(Complt. at ¶ 63).  Defendant refused to do so.  (*Id.*).  These actions amount to a conversion of

Plaintiff's property.  *See Johnson v. Citimortgage, Inc.*, 351 F. Supp. 2d 1368, 1372 (N.D. Ga.

12

2004) (Citimortgage's refusal of the plaintiff's requests to properly apply funds to the plaintiff's account is evidence of a conversion).

IV.    **Plaintiff Has Sufficiently Stated a Claim for Breach of Contract**.

The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken. *Norton v. Budget Rent a Car Sys.*, 307 Ga. App. 501, 502 (2010). Defendant Chase argues that Plaintiff did not provide enough factual allegations in her Complaint to state a claim for breach of contract. To the contrary, Plaintiff's Complaint includes at least 51 paragraphs of factual allegations, (Complaint at ¶¶ 8-58) along with six lengthy documentary exhibits attached to the Complaint.

Plaintiff has identified the contracts which she contends Chase breached—the note and security deed. (Complaint at ¶¶ 8, 9, 65). Chase is not confused by Plaintiff's reference to the note and security deed—in fact, Chase attached a copy of the security deed to its Motion to Dismiss. (Exhibit A to Defendant's Motion to Dismiss). Plaintiff contends that by the conduct outlined in her "Operative Facts," Chase breached the note and security deed.

Plaintiff alleged that she electronically transferred $3,495.00 to Chase on September 15, 2011 and that Chase did not apply this amount to her account or give her credit for her payment. (Complaint at ¶¶ 12, 25, 37, and Exhibit 3 to Complaint). Chase's refusal to give Plaintiff credit for money that Chase accepted from Plaintiff is a breach of the note and security deed. The security deed provides that the Lender will apply all payments, in a specified order, to the borrower's account. (Security Deed at page 3 of 8; Attached as Exhibit A to Defendant's Motion to Dismiss). In addition, on November 7, 2011, Plaintiff sent Chase a check in the amount of $4,660.00 for her September, October, November, and December 2011 payments. (Complaint at

13

¶¶ 13-14).  Chase refused to accept and apply her payment to her account.  (Complaint at ¶¶ 15-19).  This refusal is a breach of the note and deed.

Plaintiff also alleged that Chase was charging Shawna attorney fees and other charges which she did not owe.  (Complaint at ¶ 38).  That is a breach of the note and security deed.

Plaintiff also alleged that Chase sent its agents to trespass on her property.  (Complaint at ¶¶ 54-58).  That is a breach of the note and security deed.

Plaintiff has alleged that she has suffered damages as a result of Defendant's action.  (Complaint at ¶¶ 50-52).  She has alleged that Chase took her $3,495.00 without applying the proper credit for this amount to her account (Complaint at ¶¶ 12, 37, 62, 63) —which clearly resulted in a loss to Shawna of $3,495.00 in addition to other damages.  Plaintiff has stated sufficient factual allegations to state a claim for breach of contract under Fed. R. Civ. P. 8(a).  Defendant is clearly on notice of Plaintiff's contentions concerning the facts on which Plaintiff bases her claims for breach of contract.

**V.**   **Plaintiff Has Stated a Claim for Attempted Wrongful Foreclosure.**

Plaintiff's Complaint asserts a claim for attempted wrongful foreclosure. In *Sale City Peanut & Milling Co., Inc. v. Planters & Citizens Bank*, 107 Ga. App. 463 (1963), the Georgia Court of Appeals acknowledged that a recovery can be had under the circumstances of an attempted wrongful foreclosure where the defendants knowingly published an untrue and derogatory statement concerning the plaintiffs' financial conditions and damages were sustained as a direct result of the publication.  107 Ga. App. at 465.

Plaintiff explicitly states in her Complaint: "Chase has intentionally attempted to foreclose on Shawna's home by running foreclosure notices in the newspaper knowing that Shawna was not in default on her loan."  (Complaint at ¶ 66).  Oddly, Defendant argues in its

Motion to Dismiss that Plaintiff has not alleged that Chase knowingly and intentionally published untrue and derogatory information in connection with a foreclosure advertisement. (Def. Motion to Dismiss at p. 12). Yet Plaintiff clearly alleged that Chase acted intentionally and knowingly in running foreclosure notices while knowing Shawna was not in default. (Complaint at ¶ 66; Foreclosure Ad attached to Complaint as Exhibit 2). Plaintiff also alleged that Shawna had written to Chase on December 22, 2011 attaching proof of her payments. (Complaint at ¶ 25). Yet, despite being put on such notice that Shawna was not in default but rather had submitted her payments to Chase, Chase ran foreclosure notices in the newspaper during January, 2012 which falsely stated that Shawna was being foreclosed on due to failure to pay her indebtedness when due and in the manner provided in the note and security deed. (Complaint at ¶ 31; Foreclosure Ad attached to Complaint as Exhibit 2). Plaintiff alleged that Chase "intentionally set out to harm Shawna knowing that it had no right to foreclose on her home but did it anyway." (Complaint at ¶ 49). Plaintiff further alleged that she has sustained monetary loss as a result of Chase's wrongful acts. (Complaint at ¶ 50).

Additionally, Plaintiff alleged that Chase did not meet a condition precedent for attempting a foreclosure. (See Complaint at ¶¶ 41-48). Under the HUD regulations that apply to Plaintiff's FHA insured loan, 24 CFR § 203.604 requires that the mortgagee have a face-to-face interview with the mortgagor concerning her mortgage, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the loan are unpaid. The face-to-face meeting is mandatory if the mortgaged property is within 200 miles of the mortgagee, its servicer, or a branch office. Chase has a branch office within 200 miles of Shawna's home. (Complaint at ¶ 44). Chase did not have a face-to-face interview with Shawna, nor did it make reasonable efforts to arrange such an interview, nor did it send the required certified letter to

Shawna attempting to arrange a face-to-face meeting, nor did it send someone to her home to arrange a face-to-face interview.  (Complaint at ¶ 47).  Compliance with these HUD requirements must be met before Chase could attempt to foreclose on Shawna's home.  In fact, the lender acknowledges in the security deed that it may not foreclose in certain instances without complying first with regulations promulgated by the HUD Secretary.  The security deed states, "In many circumstances regulations issued by the [HUD] Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid.  This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary."  (Security Deed at page 5 of 8; Attached as Exhibit A to Defendant's Motion to Dismiss).  Chase's failure to comply with these conditions precedent prior to attempting foreclosure means that Chase had absolutely no right under the law to attempt a foreclosure.

Defendant argues that Plaintiff was in default on her loan since July, 2011.  (Def. Motion to Dismiss at p. 13).  That is false.  Plaintiff has alleged that she made her June, July, and August 2011 payments on September 15, 2011 by electronic transfer and that Chase did not give her credit for her $3,495.00 payment which Chase accepted.  (Complaint at ¶¶ 12, 62).  Plaintiff has also alleged that she made her September, October, November, and December 2011 payments on November 7, 2011 and again on November 28, 2011 and December 15, 2011, but that Chase refused to accept those payments.  (Complaint at ¶¶ 13-19).  Plaintiff was not in default, thus Chase had no right to attempt to foreclose on her home.

**VI.**     **<u>Plaintiff Has Stated a Claim for Trespass.</u>**

Finally, Defendant moves to dismiss Plaintiff's claim for trespass, arguing that Plaintiff was in default on her loan, thus giving Defendant the right to enter and inspect the property under the terms of the deed.

Georgia law provides that the right of enjoyment of private property is an absolute right of every citizen, and every act of another which unlawfully interferes with such enjoyment is a tort for which an action shall lie.  O.C.G.A. § 51-9-1.  This law not only addresses the tort of trespass on land (i.e., unlawful entry upon land), but also the unlawful interference with property rights such as the enjoyment of property and the unlawful interference with a party's contractual relations with a third party.  *See Piedmont Cotton Mills, Inc. v. H.W. Ivey Construction Co., Inc.*, 109 Ga. App. 876, 879-80 (1964) (A contractual right is a right in rem, and the parties to a contract have a property right in the agreement.); *Aetna Life Ins. Co. v. Harley*, 365 F. Supp. 1210, 1214 (N.D. Ga. 1973) (tort embraces within its scope all intentional invasions of contractual relations).  Interference of this type is an intentional tort.  *Piedmont Cotton Mills*, 109 Ga. App. at 880.

Defendant argues that Plaintiff has been in default since July, 2011—referring to its argument in Section I of its Motion to Dismiss concerning the fact that Shawna's bank statement shows that her payment in September, 2011 was marked "return" and "unpaid" on **September 12, 2011**.  As explained above, Defendant Chase is intentionally ignoring the fact that the same bank statement shows the payment of $3,495.00 (Shawna's June, July, and August 2011 payment) being made to JPMorgan Chase on **September 15, 2011**.  (Exhibit 3 to Complaint). Plaintiff has alleged that Chase was paid $3,495.00 on September 15, 2011; Chase accepted the payment; and that Chase refused—and continues to refuse—to give Plaintiff credit for her payment.  Because of this refusal to give her credit for the September 15, 2011 payment that

Chase accepted, Chase then also refused to accept Plaintiff's payment of $4,660.00 (September, October, November, and December 2011 payment) made on November 7, 2011, November 28, 2011, and December 15, 2011.  (Complaint at ¶¶ 13-19).  Plaintiff had provided proof to Chase that she was not in default, but had made her payments.  Plaintiff had also posted "no trespassing" signs on her property.  Yet without right to enter the property, Defendant sent an agent to enter her property despite the "no trespassing" signs.

Under the circumstances, Plaintiff was not in default, and Chase had no right under the security deed to enter her property which was marked with "no trespassing" signs.  Chase also had no right to interfere with Plaintiff's enjoyment of her property.  Plaintiff has sufficiently alleged facts to support a claim for trespass.

## **CONCLUSION**

Based on the foregoing, Plaintiff respectfully requests that the Court deny Defendant Chase's Motion to Dismiss.

This 23rd day of April, 2012.

Respectfully Submitted,

CHARLES A. GOWER, P.C.

/s/ *Charles A. Gower*
CHARLES A. GOWER
Georgia Bar No. 303500
TERESA T. ABELL
Georgia Bar No. 000383
MIRANDA J. BRASH
Georgia Bar No. 475203

1425 Wynnton Road
P. O. Box 5509
Columbus, GA  31906
(706)324-5685                                    *Attorneys for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing "PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS" was electronically filed with the Clerk of Court using the CM/ECF system, which automatically serves email notification of such filing to the attorneys of record, each of whom is a registered participant in the Court's electronic notice and filing system and each of whom may access said filing via the Court's CM/ECF system:

William L. Tucker
James C. Clark, Jr.
Thomas F. Gristina
Page, Scrantom, Sprouse, Tucker & Ford, P.C.
1111 Bay Avenue, 3rd Floor
Columbus, GA 31901

Joseph D. Wargo
Julie C. Jared
Wargo & French LLP
999 Peachtree Street, N.E.
26th Floor
Atlanta, GA 30309

This 23rd day of April, 2012.

/s/ *Charles A. Gower*
CHARLES A. GOWER