IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| SHAWNA BATES, a.k.a. SHAWNA SMITH, | * |
| | * |
| Plaintiff, | * |
| | * |
| vs. | * CASE NO. 4:12-CV-43 (CDL) |
| | * |
| JPMORGAN CHASE BANK, N.A., | * |
| | * |
| Defendant. | * |
| | * |

O R D E R

Plaintiff Shawna Bates ("Bates") asserts claims against Defendant JPMorgan Chase Bank, N.A. ("Chase") for attempted wrongful foreclosure, conversion, breach of contract, trespass, and violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617. Chase seeks dismissal of all claims except the conversion claim. For the reasons set forth below, Chase's partial motion to dismiss (ECF No. 5) is granted in part and denied in part. The Court dismisses Bates's RESPA claim based on 12 U.S.C. § 2605(k) because that section of RESPA was not in effect at the time of the conduct alleged here. The Court declines to dismiss Bates's remaining claims, including her RESPA claim asserted pursuant to 12 U.S.C. § 2605(e).

MOTION TO DISMISS STANDARD

When considering a 12(b)(6) motion to dismiss, the Court must accept as true all facts set forth in the plaintiff's

complaint and limit its consideration to the pleadings and exhibits attached thereto. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Twombly*, 550 U.S. at 570). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do[.]" *Id.* Although the complaint must contain factual allegations that "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims, *id.* at 556, "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable,'" *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly,* 550 U.S. at 556).

Bates attached various documents, including correspondence between her and Chase, to the Complaint. Chase attached the security deed, which is central to Bates's claims, to its Motion to Dismiss. The authenticity of these documents is not challenged. The Court may consider the documents in ruling on the pending motion to dismiss. *Cf. Speaker v. U.S. Dep't of*

2

*Health & Human Servs.*, 623 F.3d 1371, 1379-80 (11th Cir. 2010) (recognizing that a district court may consider a document outside the pleadings in ruling on a motion to dismiss if the document is "(1) central to the plaintiff's claim, and (2) its authenticity is not challenged") (internal quotation marks omitted).

## FACTUAL ALLEGATIONS

Bates makes the following factual allegations in her Complaint. Bates obtained a home loan in May 2008. She executed a promissory note to Synovus Mortgage Corporation in the amount of $151,092.00, and she also signed a security deed conveying a security interest in her home to Synovus. The note and security deed were later assigned to Chase.

Bates fell behind on her payments in 2011. She paid her June, July and August 2011 payments in September 2011; Bates's payment in the amount of $3,495.00 was transferred out of her bank account on September 15, 2011. That payment was not credited to Bates's account and was not returned to Bates. In November 2011, Bates attempted to pay her September, October, November and December 2011 payments by sending Chase a check for $4,660.00. Chase returned Bates's check on November 9, 2011, stating that the amount tendered was insufficient to cure a default on the loan. Later in November, Bates again sent Chase a check for $4,660.00, and Chase returned the check on December

3

1, 2011, because certified funds were required.  On December 15, 2011, Bates again tried to make her payment of $4,660.00—this time by electronic payment.  Chase electronically returned the payment on December 21, 2011.

Bates spent hours trying to straighten out her account via telephone.  In late December 2011, Bates learned from a friend that her home was advertised for foreclosure on the first Tuesday in January, 2012.  On December 22, 2011, Bates wrote Chase a letter explaining that her September payment of $3,495.00 had never been credited to her account and that she had called Chase about the issue "numerous times" and faxed her bank statement to Chase "four different times."  Compl. Ex. 3, Letter from S. Smith to Chase (Dec. 22, 2011), ECF No. 1-4.  Bates also recounted her attempts to send the payment of $4,660.00 three separate times, as well as her attempts to get answers from Chase's personnel via telephone.  *Id.*

On December 24, 2011, Bates received a letter dated December 21, 2011 from Chase's foreclosure attorney stating that her home would be foreclosed on at a foreclosure sale to be held on February 7, 2012.  She also saw another notice of foreclosure in the newspaper advertising her home for foreclosure on February 7, 2012.  In January, Bates contacted Chase via telephone, and a Chase representative told Bates that the

4

February 7, 2012 sale would likely be postponed so Chase could research the matter.

Chase sent Bates a letter dated January 25, 2012. The latter was "in response to [Bates's] recent inquiry regarding the status of" her loan. Compl. Ex. 4, Letter from Chase Foreclosure Research Dep't to S. Smith (Jan. 25, 2012), ECF No. 1-5. The letter stated, in pertinent part:

(1) Chase received Bates's check for $3,495.00 in September 2011, but the funds were returned because they were insufficient to cure the default.
(2) Chase received Bates's check for $4,660.00 on November 8, 2011, but the funds were returned because they were insufficient to cure the default or bring the account within 60 days delinquent.
(3) Chase received Bates's check for $4,660.00 on November 30, 2011, but the funds were returned because they were insufficient to cure the default or bring the account within 60 days delinquent.
(4) Bates was "currently due for the June 2011 payment." *Id.*
(5) The property was referred to foreclosure on September 8, 2011.
(6) Bates could contact Chase's foreclosure attorney to obtain a reinstatement quote.
(7) Bates could contact Chase's Loss Mitigation department for possible workout options.

*Id.*

Bates contacted Chase's foreclosure attorney, who provided her with a reinstatement quote. The reinstatement quote stated that Bates owed $12,170.18 by February 6, 2012 to reinstate the loan. Compl. Ex. 5, Letter from Barrett Daffin Frappier Levine & Block, LLP to S. Smith (Jan. 31, 2012) Attach., Reinstatement Quote, ECF No. 1-6 at 3. The reinstatement quote did not credit

5

Bates for the $3,495.00 payment Chase received in September 2011. The reinstatement quote included "Late Charges" in the amount of $232.20, "Corporate Advance Charges" in the amount of $190.00, and attorney's fees in the amount of $1,299.07. *Id.*

Bates received another letter from Chase's attorneys, this one dated February 3, 2012. The letter stated that her home was about to be foreclosed, "probably within the next 60 to 90 days." Compl. Ex. 6, Letter from Barrett Daffin Frappier Levine & Block, LLP to Occupant (Feb. 3, 2012), ECF No. 1-7. Chase did not attempt to have a face-to-face meeting with Bates regarding her mortgage.

After the foreclosure ads began running in the newspaper, "a lot of people" have ridden by Bates's house and stared at her home. Compl. ¶ 53, ECF No. 1. Bates put up a "no trespassing" sign. On February 19, 2012, Chase sent a man to take photographs of the house, and he came on the property to do so.

Bates asserts the following substantive claims against Chase:

(1) Claims under RESPA based on the letter Bates sent to Chase on December 22, 2011. Compl. ¶¶ 59-61.

(2) A conversion claim based on Chase's alleged refusal to credit $3,495.00 it accepted from Bates to Bates's account. *Id.* ¶¶ 62-64.

(3) A breach of contract claim based on Chase's alleged breach of "the terms of its contracts with [Bates] – note and security deed." *Id.* ¶ 65.

(4) An attempted wrongful foreclosure claim based on Chase's foreclosure notices in the newspaper. *Id.* ¶¶ 66-68.

(5) A trespass claim based on Chase's agent's alleged trespass on Bates's property. *Id.* ¶ 69.

## DISCUSSION

Chase contends that all of Bates's claims except the conversion claim must be dismissed for failure to state a claim. The Court addresses each claim in turn.

**I. RESPA Claims**

    A.   <u>Claims Under 12 U.S.C. § 2605(e)</u>

Bates alleges that Chase failed to comply with RESPA's provisions that require a loan servicer to respond to borrower inquiries. Under RESPA, if a borrower sends her mortgage servicer a "qualified written request" seeking account corrections or account information, the servicer must acknowledge receipt of the request and respond to the request by correcting the account or conducting an investigation and providing the borrower with a written explanation of why the servicer believes the account is correct. 12 U.S.C. § 2605(e)(1)-(2). If a servicer fails to comply with RESPA, the borrower may recover "any actual damages to the borrower as a result of the failure." 12 U.S.C. § 2605(f)(1)(A).

In this case, Bates alleges that she sent a qualified written request to Chase on December 22, 2011. Under RESPA, a "qualified written request" is a written correspondence that

7

enables the servicer to identify the name and account of the borrower and explains why the borrower believes that her account is in error. 12 U.S.C. § 2605(e)(1)(B). Chase cannot seriously dispute that Bates's December 22, 2011 letter was a qualified written request within the meaning of RESPA. The letter identified the borrower by name and account number, it contained a detailed list of issues with the account, and it included exhibits in support of Bates's belief that her account was in error.

Chase contends, however, that Bates's claim under 12 U.S.C. § 2605(e) ("§ 2605(e)") fails as a matter of law because Chase responded to Bates's letter on January 24, 2012. Chase emphasizes that Bates alleged in paragraph 28 of her Complaint that she had never received a response to her December 22, 2011 letter, even though Bates attached the January 24, 2012 letter to her Complaint. Bates, however, also alleges that Chase failed to comply with § 2605(e) because it "failed to proper[l]y respond" to Bates's qualified written requests and "reported adverse credit information to the credit bureaus." Compl. ¶ 59. Based on a plain reading of the Complaint, it is clear that Bates alleges that Chase accepted a payment of $3,495.00 from her in September 2011 but never credited that amount to her account. *E.g.*, Compl. ¶¶ 12, 37; Compl. Ex. 3, Letter from S. Smith to Chase (Dec. 22, 2011) ("On September 15, 2011 I paid

8

$3,495.00 to you for my June, July, and August payments. Enclosed as Exhibit 1 is a copy of my bank statement showing this. I have never received credit for this amount which was paid to you by electronic transfer."). Therefore, according to Bates, Chase's January 24, 2012 letter was not a proper response under RESPA because it did not correct her account by crediting the $3,495.00 to her account. Rather, the January 24, 2012 letter stated that the $3,495.00 had been returned to Bates even though Bates alleges that it had not. For these reasons, the Court concludes that Bates adequately alleged that Chase did not properly respond to her December 22, 2011 qualified written request, and Chase's motion to dismiss her § 2605(e) RESPA claim is therefore denied.

    B.    <u>Claims Under 12 U.S.C. § 2605(k)</u>

Bates also attempts to assert claims under 12 U.S.C. § 2605(k) ("§2605(k)"). Though both parties appear to be under the impression that § 2605(k) went into effect on January 12, 2012, that provision was not in effect on January 12, 2012 and has not yet taken effect. Under 12 U.S.C. § 2605(k)(1)(C), a mortgage servicer "shall not . . . fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C). Section 2605(k)

was added to RESPA by the Mortgage Reform and Anti-Predatory Lending Act, which is Title XIV of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act"), Pub. L. No. 111-203, 124 Stat. 1376 (2010). Dodd-Frank Act § 1463, 124 Stat. at 2182. Title XIV of the Dodd-Frank Act, including § 2605(k) of RESPA, becomes effective "on the date on which the final regulations implementing such section, or provision, take effect" or, if no final regulations have been issued, "18 months after the designated transfer date."[1] Dodd-Frank Act § 1400(c), 124 Stat. at 2136; *see also* U.S. Gov't Printing Office, 2011 U.S. Code Title 12, Chapter 27, 12 U.S.C. § 2605 note re "Effective Date of 2010 Amendment," *available at* http://www.gpo.gov/fdsys/pkg/USCODE-2011-title12/html/USCODE-2011-title12.htm (last visited Aug. 27, 2012). The designated transfer date was July 21, 2011. Designated Transfer Date, 75 Fed. Reg. 57,252-02 (Sept. 20, 2010). Therefore, § 2605(k) of

---

[1] The effective date of many provisions of the Dodd-Frank Act—including the effective date of Title XIV—is tied to the "designated transfer date." On the designated transfer date, the consumer protection functions of the Dodd-Frank Act were transferred from a variety of different agencies to one agency: the Bureau of Consumer Financial Protection. Dodd-Frank Act § 1061, 124 Stat. at 2035-39. For purposes of Title XIV of the Dodd-Frank Act, the "designated transfer date" means the date established in § 1062 of the Dodd-Frank Act. Dodd-Frank Act § 1495, 124 Stat. at 2207. Though the Dodd-Frank Act itself did not specify a particular date as the "designated transfer date," the Secretary of the Treasury was required to set a specific date as the "designated transfer date." Dodd-Frank Act § 1062, 124 Stat. at 2040. The Secretary of the Treasury designated July 21, 2011 as the "designated transfer date." Designated Transfer Date, 75 Fed. Reg. 57,252-02 (Sept. 20, 2010).

RESPA becomes effective when the final regulations implementing it are issued or on January 21, 2013—whichever is earlier. Based on the Court's research, as of the date of this Order, no final regulations have been issued implementing § 2605(k) of RESPA. *Cf.* Notice & Request for Public Comment, 76 Fed. Reg. 77,766-01 (Dec. 14, 2011) (noting that the Bureau of Consumer Financial Protection is required to publish rules implementing § 1463 of the Dodd-Frank Act by January 31, 2013 and soliciting comments on the Bureau's proposed approach to crafting the regulations). Because § 2605(k) of RESPA was not yet in effect at the time of the events giving rise to this action, Bates may not bring a RESPA claim under that section. Bates's § 2605(k) claim is therefore dismissed.

## II.  Breach of Contract Claim

Bates asserts a claim for breach of contract against Chase. Chase argues that Bates has not adequately pled a breach of contract claim because, although she alleges that Chase breached the note and security deed, Bates has not identified specific provisions in the note and security deed that Chase allegedly breached.[2]

---

[2] In her response to Chase's Motion to Dismiss and in her Sur-Reply Brief, Bates pointed to specific provisions in the security deed and provided a detailed explanation of her theory that Chase breached those provisions. Pl.'s Resp. to Def.'s Mot. to Dismiss 13-14, ECF No. 12; Pl.'s Sur-Reply Br. to Def.'s Mot. to Dismiss 10, ECF No. 21. Bates did not, however, seek to amend her Complaint to add these

11

Bates alleges that she executed a note and security deed that were assigned to Chase. Though Bates did not attach the note and security deed to the Complaint, Chase did attach it to the Motion to Dismiss, and there is no challenge to its authenticity. Bates alleges that Chase failed to apply a payment to her account even though Chase accepted the payment.[3] Compl. ¶¶ 12, 37. Bates further alleges that Chase refused to accept another payment that she tried to send on three separate occasions. *Id.* ¶¶ 13-19. Bates also alleges that, as part of the reinstatement quote, Chase sought fees and charges that Bates "did not owe." *Id.* ¶ 38. Bates also alleges that certain HUD regulations were made terms of her contract with Chase and that Chase did not follow them. *Id.* ¶¶ 42-48. Finally, Bates alleges that Chase attempted to invoke the power of sale even though it was not authorized to do so. *E.g., id.* ¶ 49.

While these allegations are not as detailed as they could be, the Court finds that they sufficiently place Defendant on notice as to the nature of her claim and include factual allegations in support of that claim. Here, it is obvious that Bates is alleging that Chase breached provisions of the note and

---

additional allegations, and the Court is limited to the allegations in the Complaint itself.

[3] Chase contends that it returned the September 2011 payment by sending Bates a check for the full amount of the payment. Chase supports this contention with evidence that is outside the pleadings, and the Court cannot consider such evidence at this stage in the litigation. Chase may, of course, submit this evidence in support of a summary judgment motion.

security deed regarding (1) application of payments, (2) permissible fees and charges, including those in connection with reinstatement, (3) duties under certain HUD regulations that were allegedly incorporated into the note and security deed, and (4) invocation of the power of sale. The Court therefore concludes that the Complaint contains "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Chase's motion to dismiss Bates's breach of contract claim is therefore denied.

### III. Attempted Wrongful Foreclosure Claim

Bates alleges that Chase "intentionally attempted to foreclose on [Bates's] home by running foreclosure notices in the newspaper knowing that [Bates] was not in default on her loan." Compl. ¶ 66. Bates further alleges that Chase caused her "extreme emotional distress, worry, and fear of losing her home among other damages." *Id.* ¶ 67. Bates also alleges that Chase did not properly apply payments to her account. Compl. ¶¶ 12-19, 37. Based on these allegations, the Court concludes that Bates is alleging attempted wrongful foreclosure.

To state a claim for attempted wrongful foreclosure, Bates must show that Chase "knowingly and intentionally published 'untrue and derogatory information concerning [her] financial condition,'" and that "'damages were sustained as a direct

13

result of this publication.'" *Hauf v. HomeQ Servicing Corp.*, No. 4:05-CV-109 (CDL), 2007 WL 486699, at *6 (M.D. Ga. Feb. 9, 2007) (quoting *Aetna Fin. Co. v. Culpepper,* 171 Ga. App. 315, 319, 320 S.E.2d 228, 232 (1984)).  Chase contends that Bates's Complaint fails to state a claim for attempted wrongful foreclosure because the Complaint itself establishes that Bates's loan was in default before Chase initiated foreclosure proceedings.  Specifically, Chase asserts that Bates admits that she did not tender her payment to cover September and October 2011 until November 2011, and Chase returned that particular payment to Bates on three separate occasions.

Chase points out that, under the security deed, a borrower "defaults by failing to pay in full any monthly payment required by [the security deed] prior to or on the due date of the next monthly payment."  Mot. to Dismiss Ex. A, Security Deed ¶ 9(a), ECF No. 5-2 [hereinafter Security Deed].  If a borrower defaults by failing to make payments, the lender may "require immediate payment in full of all sums secured by [the security deed]." *Id.*  The lender may invoke the power of sale if the lender "requires immediate payment in full of all sums under paragraph 9." *Id.* ¶ 18.  But, if the lender has accelerated the debt, the borrower "has a right to be reinstated" by tendering "in a lump sum all amounts required to bring [her] account current." *Id.* ¶ 10.  Therefore, under the terms of the security deed, if a

14

borrower defaults and the lender accelerates the debt, the borrower has a right to be reinstated if she tenders a payment sufficient to bring her account current.

There is no allegation that Chase declared the loan in default or attempted to accelerate the debt before December 2011. As discussed above, Bates alleges that Chase did not credit her September 2011 payment of $3,495.00 to her account and did not return it to her. Bates also alleges that she tendered the amount required to bring her loan current in November 2011—a month before Chase notified her of its intention to accelerate the debt—but Chase wrongfully rejected that payment. Based on these allegations, the Court concludes that Bates has sufficiently alleged that Chase was not permitted to invoke the power of sale under the circumstances, that Chase knew it could not lawfully proceed with the foreclosure, but that it proceeded anyway. Accordingly, the Court concludes that Bates adequately alleges an attempted wrongful foreclosure claim, and Chase's motion to dismiss that claim is denied.

**IV. Trespass Claim**

Bates also alleges that Chase committed the tort of trespass when it sent an agent onto her property to take photographs in February 2012. Chase asserts that its agent was not trespassing because the security deed permitted it to inspect the property if the property is "vacant or abandoned or

15

the loan is in default." Security Deed ¶ 5. Bates contends that she was not in default, but her Complaint does allege that she did not attempt to pay her September 2011 payment until November 7, 2011. Compl. ¶ 13. Therefore, Bates does admit that she was in default in November under the terms of the security deed. *See* Security Deed ¶ 9(a) (stating that a borrower is in default if she fails "to pay in full any monthly payment . . . prior to or on the due date of the next monthly payment"). Bates also alleges, however, that she attempted to cure the default and that Chase wrongfully refused her payment. Therefore, Bates contends that the default status of her loan as of February 2012 was caused not by Bates's failure to cure the default but by Chase's wrongful refusal of her payment. Based on these allegations, the Court declines to dismiss Bates's trespass claim at this time.

CONCLUSION

For the reasons set forth above, the Court dismisses Bates's RESPA claim under 12 U.S.C. § 2605(k). The following claims remain pending: (1) conversion claim, (2) RESPA claim under 12 U.S.C. § 2605(e), (3) breach of contract claim, (4) attempted wrongful foreclosure claim, and (5) trespass claim.

The Court previously stayed the discovery and other pre-trial deadlines pending the Court's ruling on Chase's Motion to Dismiss. That stay is hereby lifted. The Court has entered a

16

Scheduling and Discovery Order with deadlines tied to the filing of a responsive pleading by Chase.  Scheduling & Discovery Order, ECF No. 16.  Chase shall file an Answer to the Complaint within twenty-one days of the date of this Order.

The Court notes that Chase has filed a Motion for Partial Summary Judgment as to Bates's conversion claim.  The Court will decide that motion when it becomes ripe.  In the meantime, should Chase wish to withdraw or amend its summary judgment motion in light of this Order, Chase may do so.

IT IS SO ORDERED, this 27th day of August, 2012.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE
