Exhibit B

Asgmt 11089-46

AUTHORITY TO CANCEL THIS DEED
RECORDED D.B. 12195 PAGE 157

BOOK 9249 PAGE 17

GEORGIA INTANGIBLE TAX
$ 115.50
8/26 1993
Tax Commissioner
Gwinnett County

FILED & RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA.
1993 AUG 31 AM 8:00
GARY R. YATES, CLERK

―――――――――――――― [Space Above This Line For Recording Data] ――――――――――――――

State of Georgia

## SECURITY DEED

FHA Case No.
101-6527643-703

THIS SECURITY DEED ("Security Instrument") is given on   AUGUST 3, 1993           . The Grantor is
MARK L. KRELL AND HOLLIS W. KRELL, HUSBAND AND WIFE

4621 VINTAGE LANE, BUFORD, GEORGIA 30518                                     , whose address is

("Borrower"). This Security Instrument is given to
MOUNTAIN STATES MORTGAGE CENTERS INC.

which is organized and existing under the laws of   THE STATE OF UTAH                          , and whose
address is   1333 EAST 9400 SOUTH SANDY, UTAH 84093
                                                    ("Lender"). Borrower owes Lender the principal sum of
THIRTY EIGHT THOUSAND ONE HUNDRED FORTY SIX AND NO/100THS
                                              Dollars (U.S. $   38,146.00            ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on   SEPTEMBER 2023           .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications; (b) the payment of all other sums, with interest, advanced under paragraph 6 to protect the
security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security
Instrument and the Note. For this purpose, Borrower does hereby grant and convey to Lender and Lender's successors and
assigns, with power of sale, the following described property located in
                                                                        GWINNETT            County, Georgia:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 266 OF THE 7TH DISTRICT,
GWINNETT COUNTY, GEORGIA, BEING LOT 16, BLOCK A, SECTION ONE, OF PEBBLE BROOK SUBDIVISION,
AS PER PLAT RECORDED IN PLAT BOOK 5, PAGE 7, GWINNETT COUNTY RECORDS, WHICH PLAT IS
INCORPORATED HEREIN BY THIS REFERENCE AND MADE A PART OF THIS DESCRIPTION.

Return To:

NORTHSIDE TITLE AND ABSTRACT CO., INC.
1040 CROWN POINTE PKWY
SUITE 1000
ATLANTA, GA 30338

which has the address of   4621 VINTAGE LANE                              BUFORD          [Street, City],
Georgia              30518       [Zip Code] ("Property Address");
         FHA Georgia Security Deed - 4/92
-4R(GA) (9212)
VMP MORTGAGE FORMS - (313)293-8100 - (800)521-7291

093432-33

Page 1 of 6

15

BOOK 9249 PAGE 18

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payments of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, an installment of any (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required by paragraph 4.

Each monthly installment for items (a), (b), and (c) shall equal one-twelfth of the annual amounts, as reasonably estimated by Lender, plus an amount sufficient to maintain an additional balance of not more than one-sixth of the estimated amounts. The full annual amount for each item shall be accumulated by Lender within a period ending one month before an item would become delinquent. Lender shall hold the amounts collected in trust to pay items (a), (b), and (c) before they become delinquent.

If at any time the total of the payments held by Lender for items (a), (b), and (c), together with the future monthly payments for such items payable to Lender prior to the due dates of such items, exceeds by more than one-sixth the estimated amount of payments required to pay such items when due, and if payments on the Note are current, then Lender shall either refund the excess over one-sixth of the estimated payments or credit the excess over one-sixth of the estimated payments to subsequent payments by Borrower, at the option of Borrower. If the total of the payments made by Borrower for item (a), (b), or (c) is insufficient to pay the item when due, then Borrower shall pay to Lender any amount necessary to make up the deficiency on or before the date the item becomes due.

As used in this Security Instrument, "Secretary" means the Secretary of Housing and Urban Development or his or her designee. In any year in which the Lender must pay a mortgage insurance premium to the Secretary (or any year in which such premium would have been required if the Lender still held the Security Instrument), each monthly payment shall also include either: (i) an installment of the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary. Each monthly installment of the mortgage insurance premium shall be in an amount sufficient to accumulate the full annual mortgage insurance premium with Lender one month prior to the date the full annual mortgage insurance premium is due to the Secretary, or if this Security Instrument is held by the Secretary, each monthly charge shall be in an amount equal to one-twelfth of one-half percent of the outstanding principal balance due on the Note.

If Borrower tenders to Lender the full payment of all sums secured by this Security Instrument, Borrower's account shall be credited with the balance remaining for all installments for items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;
Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;
Third, to interest due under the Note;
Fourth, to amortization of the principal of the Note;
Fifth, to late charges due under the Note.

-4R(GA)

Page 2 of 6

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless the Secretary determines this requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

7. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are

-4R(GA)                                              Page 3 of 6

BOOK 9249 PAGE 20

referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

   (a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
      (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
      (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

   (b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:
      (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent) by the Borrower, and
      (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

   (c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

   (d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights in the case of payment defaults to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

   (e) **Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note secured thereby not be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option and notwithstanding anything in paragraph 9, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note secured thereby, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

　-4R(GA)                Page 4 of 6

BOOK 9249 PAGE 21

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9.b. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of this Security Instrument.

**16. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 16.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Foreclosure Procedure.** If Lender requires immediate payment in full of all sums under paragraph 9, Lender may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale to Borrower in the manner provided in paragraph 13 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.

-4R(GA)   Page 5 of 6

If the Property is sold pursuant to this paragraph 17, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

18. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

19. **Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

20. **Assumption not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

21. **Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

22. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

☐ Condominium Rider ☐ Graduated Payment Rider ☐ Other [Specify]
☐ Planned Unit Development Rider ☐ Growing Equity Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Witnesses:

_____ (Seal)
MARK L. KRELL                    -Borrower

_____ (Seal)
HOLLIS W. KRELL                  -Borrower

County

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

Unofficial Witness

Notary Public, Gwinnett County, Georgia
My Commission Expires Feb. 19, 1995

-4R(GA)                          Page 6 of 6