IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

SHAWNA BATES, a.k.a.          *
SHAWNA SMITH,
                             *
     Plaintiff,
                             *
vs.                                     CASE NO. 4:12-CV-43 (CDL)
                             *
J.P. MORGAN CHASE BANK, N.A.,
                             *
     Defendant.
                             *
_____

O R D E R

Plaintiff Shawna Bates defaulted on her mortgage with Defendant J.P. Morgan Chase Bank, N.A.  Chase initiated foreclosure proceedings but never actually foreclosed on Bates's property.  Bates brought this action against Chase, contending that she suffered emotional distress and other damages because Chase mishandled her account and published a foreclosure notice regarding her property.  Presently pending before the Court are Bates's Motion for Partial Summary Judgment (ECF No. 60) and Chase's Motion for Summary Judgment (ECF No. 61).  For the reasons set forth below, Chase's motion is granted, and Bates's motion is denied.[1]

---

[1] Also before the Court is Chase's Motion for Judgment on the Pleadings (ECF No. 44).  The Court finds that this action should be decided on the summary judgment record, not the pleadings, and therefore terminates the Motion for Judgment on the Pleadings as moot.  The Court also terminates as moot Chase's motion to amend its answer to add the affirmative defense of mortgage fraud (ECF No. 83).

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

FACTUAL BACKGROUND

Unless otherwise noted, the following facts are undisputed for purposes of summary judgment.

Bates, along with her then-boyfriend Jeffrey Smith, obtained a home loan from Synovus Mortgage Corporation in May 2008.[2]  Smith was the borrower, and Bates was the co-borrower. Chase obtained the Note and Security Deed by assignment and

---

[2]  Bates identified herself as "Shawna M. Smith" on the loan application, and she used the surname Smith in much of her correspondence with Chase.  Bates contends that she maintained a common-law marriage with Smith.  Georgia only recognizes common-law marriages entered into prior to January 1, 1997.  O.C.G.A. § 19-3-1.1. There is no evidence that Bates and Smith entered a common-law marriage prior to January 1, 1997, so the Court cannot find that Bates and Smith were married.

became the owner and servicer of Bates's loan.  The promissory note ("Note") Bates signed provides that the borrower "defaults by failing to pay in full any monthly payment."  Def.'s Mot. for Summ. J. Ex. B, Note ¶ 6(B), ECF No. 61-3.  The Note further states that in the case of a payment default, the lender may "require immediate payment in full of the principal balance remaining due and all accrued interest."  *Id.*  The security deed ("Deed") Bates signed likewise provides that the lender may accelerate the debt if the borrower "defaults by failing to pay in full any monthly payment . . . prior to or on the due date of the next monthly payment."  Def.'s Mot. for Summ. J. Ex. C, Security Deed ¶ 9(a)(i).  The Note references regulations issued by the Department of Housing and Urban Development ("HUD") and states, "In many circumstances regulations issued by the [HUD] Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults.  This Note does not authorize acceleration when not permitted by HUD regulations."  Note ¶ 6(B).

Bates does not dispute that she fell behind on her loan payments.[3]  Chase considered Bates's loan to be in default as of April 1, 2011 because she owed two mortgage payments plus late fees.  Def.'s Mot. for Summ. J. Ex. F, Letter from Chase to J.

---

[3] At some point, Smith moved out of the house and stopped helping with the bills.  It is unclear when.

Smith (May 6, 2011) at CHASE0000052-CHASE0000054, ECF No. 61-7 at 12-14; Def.'s Mot. for Summ. J. Ex. G, Notice of Intent to Foreclose (May 31, 2011) at CHASE0000059, ECF No. 61-8 at 3. Although Bates asserts that she made up her May payment in July, it is undisputed that she also missed her June and July 2011 mortgage payments and remained in default. Def.'s Mot. for Summ. J. Ex. H, Notice of Intent to Foreclose (July 29, 2011) at CHASE0000079, ECF No. 61-9 at 4. It is also undisputed that Bates missed her August 2011 payment.

In July 2011, Chase sent a Notice of Intent to Foreclose to Bates's address.[4] *Id.* In that notice, Chase informed Bates and Smith that they were two payments behind and had thirty-two days to cure the default. *Id.* ¶ 3. The notice also stated that if the default was not cured with certified funds within thirty-two days, then Chase would commence foreclosure proceedings without further notice to Bates and Smith. *Id.* ¶¶ 4, 6.

Under the Deed, the lender "may inspect the Property if the Property is vacant or abandoned or the loan is in default."

---

[4] Bates asserts that neither she nor Smith received approximately ten notices Chase sent to their residence between October 2010 and July 2011 to alert them that their account was in default and that they were facing foreclosure. Bates acknowledges receiving other correspondence from Chase during that timeframe. Chase presented evidence that its vendor mailed the letters "Return Service Requested" and that the letters were not returned undelivered. Def.'s Resp. in Opp'n to Pl.'s Mot. for Summ. J. Ex. AA, Conley Decl. ¶¶ 6-9, ECF No. 85-3. Even if a genuine factual dispute exists as to whether Bates received the notices, it is undisputed that her account was in default.

Deed ¶ 5.   The July Notice of Intent to Foreclose states that
Chase would conduct property inspections while the loan remained
in default and that Bates would have to pay the cost of the
inspections.   Notice of Intent to Foreclose at CHASE0000080 ¶ 8,
ECF No. 61-9 at 5.   Chase conducted monthly occupancy
inspections of the property beginning in July 2011.[5]   Def.'s Mot.
for Summ. J. Ex. J, Inspection Detail Reports, ECF No. 61-11 at
5-26.

During the summer of 2011, Chase attempted to contact Bates
and Smith by telephone on many occasions.   Bates Dep. 83:14-
84:10, ECF No. 69 (acknowledging telephone calls from Chase).
Chase sent a representative to the couple's home on August 6,
2011, but no one was home at the time.   A. Smith Dep. 136:1-
137:4, ECF No. 55-1; A. Smith Dep. Ex. 37, Door Knock Visit
Reports at CHASE0000278, ECF No. 55-3 at 101.   Chase asserts
that it also sent a representative to the home on August 9, 2011
and actually spoke with Bates, who accepted documents regarding
her mortgage.   A. Smith Dep. 137:7-15; A. Smith Dep. Ex. 37,
Door Knock Visit Reports at CHASE0000278, ECF No. 55-3 at 101.
Bates, however, denies meeting with anyone from Chase about her

---

[5] Bates asserts that she did not receive the July notice and that Chase
did not notify her that its inspectors would be conducting
inspections.   It is undisputed that Bates saw inspectors on her
property on three occasions and that they left when she saw them and
asked them to leave.

mortgage.  Bates Dep. 88:9-12 (stating that Bates did not recall anyone coming to her home to talk with her about her mortgage).

On September 7, 2011, Chase received a personal check from Bates in the amount of $3,495.00, which Bates contends was sufficient to cover her June, July, and August payments.  Bates does not dispute that she also owed late fees for June, July, and August and that her check was not sufficient to cover them. Bates Dep. 148:18-149:2; *accord* Note ¶ 6(A) (stating that if full payment is not received within fifteen days of the due date, the lender may collect a late charge in the amount of 4% of the overdue payment).  The check was also not enough to cover the property inspection fees.  Bates's bank did not honor the check on September 7.  Chase initiated foreclosure proceedings on September 7, 2011 and referred the loan to outside foreclosure counsel on September 8, 2011.  Def.'s Resp. in Opp'n to Pl.'s Mot. for Summ. J. [hereinafter Def.'s Resp.] Ex. Z, House Decl. ¶¶ 11-12, ECF No. 85-2; *accord* Def.'s Resp. Ex. FF, System Screen Shot, ECF No. 85-8.

When a loan is in foreclosure, Chase only accepts certified funds, and Chase will not accept payments that are not enough to bring the account current.  Def.'s Mot. for Summ. J. Ex. K, Wilkerson Decl. ¶ 8, ECF No. 61-12; *accord* Notice of Intent to Foreclose at CHASE0000080 ¶ 6, ECF No. 61-9 at 5.  Bates's bank sent Chase an electronic funds transfer in the amount of

$3,495.00 on behalf of Bates on September 8, 2011.  On September 12, 2011, Chase sent Bates a letter stating that it could not accept her $3,495.00 payment because "Certified funds are required."  A. Smith Dep. Ex. 1, Letter from Chase to J. Smith (Sept. 12, 2011), ECF No. 55-2 at 1.

Bates insists that Chase retained her $3,495.00 payment, but the record establishes that Chase attempted to return the payment by sending Bates a check for $3,495.00 in September 2011.  When Bates failed to negotiate the check and it was about to go stale, Chase sent Bates a replacement check that she undisputedly received.  The Court reached this conclusion in its order granting Chase's summary judgment motion on Bates's conversion claim.  *Bates v. J.P. Morgan Chase Bank, N.A.*, No. 4:12-CV-43 (CDL), 2012 WL 5389923, at *2 (M.D. Ga. Nov. 5, 2012).  As the Court previously found, on September 15, 2011, Chase issued a check for $3,495.00 payable to Bates and Smith.  Def.'s Statement of Undisputed Material Facts Ex. 1, Yarmesch Decl. ¶ 11, ECF No. 24-1; Yarmesch Decl. Ex. C, Check No. 9000017336, ECF No. 24-4.  A Chase employee placed the check in an envelope and directed Chase's outgoing mail department to mail the check to Bates.  Yarmesch Decl. ¶¶ 13-15.  After the employee placed the check in the outgoing mail collection box, it was not returned to him.  *Id.* ¶ 17.  In March of 2012, the Chase employee realized that the September 15, 2011 check had

not been cashed, and Chase issued a new check and mailed it to
Bates. *Id.* ¶¶ 18-27. It is undisputed that Bates received the
March 2012 check. Based on this evidence, which Bates did not
rebut, Chase did not retain Bates's September 2011 payment.

When Chase rejected Bates's September 2011 check, Bates's
account remained in default. Bates did not make another payment
in September, and she did not make a payment in October. A
Chase representative went to Bates's home on October 14 and 15,
2011, but no one was home at the time. A. Smith Dep. Ex. 37,
Door Knock Visit Reports at CHASE0000240, ECF No. 55-3 at 97.
The representative left packets of information at the front
door, *id.*, but Bates did not receive them. Bates Dep. 87:8-19
(hypothesizing that if Chase's representative left a package,
Bates's dog may have eaten it).

Bates owed Chase at least $7,388.14 in mortgage payments,
late fees, and property inspection fees by the end of October
2011. House Decl. ¶ 23. On November 7, 2011, Bates sent Chase
a personal check for $4,660.00. Bates believed that this amount
was sufficient to cover her payments for September, October,
November, and December 2011. It is undisputed that the amount
did not include late fees for September and October and that it
did not include property inspection fees. Bates claims that she
repeatedly asked Chase to provide her with the amount of late
fees due and that Chase never did so. Pl.'s Resp. in Opp'n to

Def.'s Mot. for Summ. J. Attach. 4, Bates Supplemental Decl. ¶ 121, ECF No. 77-4.   Chase rejected the November 7 check because it was not sufficient to cure the default.   A. Smith Dep. Ex. 4, Letter from Chase to J. Smith (Nov. 9, 2011), ECF No. 55-2 at 6.

On November 22, 2011, after she received the returned check for $4,660.00, Bates called Chase.   Bates explained that she had made a payment for $3,495.00 in September and that the payment had not been applied to her account.   The Chase representative asked Bates to fax a copy of her bank statement so that Chase could research the issue.   In response to the November 22, 2011 telephone call, Chase researched Bates's account and determined that the $3,495.00 payment had been returned because the check was not sufficient to cure the default.   A. Smith Dep. Ex. 6, Letter from L. Hardy to S. Smith (Nov. 30, 2011), ECF No. 55-2 at 12.   Chase also determined that the $4,660.00 payment had been returned because the check was not sufficient to cure the default and was not certified funds.   *Id.*   After that, Bates tried twice more to submit a payment for $4,660.00, but Chase rejected both payments.

The Deed requires that if Chase invokes the power of sale, Chase must give a copy of the notice of sale to Bates via first class mail.   Deed ¶¶ 13, 18.   According to Bates, Chase published a notice of sale on December 8, 2011 advertising a

sale date of January 2012 but did not notify her.  Chase's foreclosure attorney sent Bates a letter dated December 21, 2011 and included a copy of the notice of sale scheduled for February 7, 2012.  A. Smith Decl. Ex. 14, Letter from Barrett Daffin to S. Smith (Dec. 21, 2011), ECF No. 55-2 at 32-35.

On December 22, 2011, Bates sent Chase a letter.  A. Smith Dep. Ex. 15, Letter from S. Smith to Chase (Dec. 22, 2011), ECF No. 55-2 at 36-37.  In that letter, Bates explained her belief that Chase had received and retained her September payment in the amount of $3,495.00 but had not applied it to her account. *Id.*  Bates also detailed her attempts to make the $4,660.00 payment in November and December.  *Id.*  She also expressed her frustration with Chase's telephone customer service department. *Id.*  Finally, Bates asked Chase to straighten out her account and let her know what she needed to do to stay in her home.  *Id.*

Chase responded to Bates's letter on January 25, 2012. Chase explained that it had returned the $3,495.00 check because the amount was not sufficient to cure the default.  A. Smith Dep. Ex. 17, Letter from Chase to J. Smith (Jan. 25, 2012), ECF No. 55-2 at 54-55.  Chase further explained that it had rejected the attempted payments for $4,660.00 because the funds were not sufficient to cure the default.  *Id.*  Chase also stated that only certified funds would be accepted for the full

reinstatement amount. *Id.* Chase instructed Bates to contact its foreclosure attorney for a reinstatement quote. *Id.*

Chase published foreclosure notices regarding Bates's house in December 2011, January 2012, and March 2012. Chase, however, never actually foreclosed on Bates's property.

Bates filed this action on February 21, 2012. On March 29, 2012, Bates sent Chase another letter. A. Smith Dep. Ex. 24, Letter from S. Smith to Chase (Mar. 29, 2012), ECF No. 55-2 at 74. In that letter, Bates acknowledged receipt of the $3,495.00 refund check and asked why Chase returned it. *Id.* Bates also stated that her account was only behind because Chase returned her checks. *Id.* Bates again asked Chase to straighten out her account. Chase did not respond to the March 29, 2012 letter.

DISCUSSION

I. **Breach of Contract & Attempted Wrongful Foreclosure Claims**

Bates's breach of contract and attempted wrongful foreclosure claims are based on Chase's rejection of Bates's September 2011 payment, Chase's alleged failure to comply with certain HUD regulations before initiating foreclosure, and Chase's alleged failure to send Bates notice of the scheduled foreclosure sales. The Court addresses each issue in turn.

A.   Claims Based on September 2011 Payment Rejection

Bates claims that Chase breached its contract with her when it rejected her September 2011 payment, which was three months

11

late and admittedly not enough to cover the full amount due.
Bates further contends that this breach caused the alleged
wrongful attempted foreclosure.   Specifically, Bates contends
that Chase breached the provision of the Deed regarding
application of payments when it rejected her September 2011
payment.   Nothing in the deed, however, requires Chase to accept
a late partial payment when a loan is in default.   Bates
maintains that Chase actually accepted the payment and declined
to apply it to her account, but, as discussed above, Chase
rejected the payment and sent Bates a refund check.   Therefore,
the record does not support a breach of contract claim based on
Chase's rejection of the September 2011 payment.[6]   And because
Bates's account was in default when Chase published the
foreclosure notices, the record does not support an attempted
wrongful foreclosure claim.

B.   Claims Based on Failure to Have Face-to-Face Meeting

Bates also asserts breach of contract and attempted
wrongful foreclosure claims based on Chase's alleged failure to
have a face-to-face meeting with her as required by 24 C.F.R. §

---

[6] To the extent Bates attempts to base her breach of contract and
attempted wrongful foreclosure claims on a violation of the HUD
regulation that requires lenders to accept partial mortgage payments
under certain circumstances, that argument fails.   As discussed in
more detail below, a borrower may not base a damages claim on a
violation of HUD regulations.   Also, Chase had initiated foreclosure
proceedings by the time it rejected Bates's September 2011 payment, so
even if Bates could base a claim on the HUD regulation, it would fail.
See 24 C.F.R. § 203.556(d)(4) (permitting return of partial payment if
foreclosure has been commenced).

203.604(b).   The Note states that it "does not authorize
acceleration when not permitted by HUD regulations."   Note ¶
6(B).  "HUD requires this language to be incorporated into deeds
of trust which secure its federally insured loans." *Mathews v.
PHH Mortg. Corp.*, 724 S.E.2d 196, 202 (Va. 2012) (citing 24
C.F.R § 203.17(a)).   And, under 24 C.F.R. § 203.604(b), a lender
"must have a face-to-face interview with the [borrower] or make
a reasonable effort to arrange such a meeting." *Id.*  A genuine
factual dispute exists as to whether Chase made reasonable
efforts to arrange a face-to-face interview.   The issue to be
decided here is whether Bates may recover damages for breach of
contract and attempted wrongful foreclosure based on Chase's
alleged failure to comply with 24 C.F.R. § 203.604(b).   She may
not.

Bates pointed the Court to no authority in support of her
assertion that a violation of the HUD regulations supports a
claim for *damages*.    Contrary to Bates's argument, binding
precedent in this Circuit, as well as authority from the Georgia
courts, establishes that a borrower has no private right of
action for damages against her mortgage servicer for a violation
of HUD regulations. *Roberts v. Cameron-Brown Co.*, 556 F.2d 356,
360-61 (5th Cir. 1977);[7] *Krell v. Nat'l Mortg. Corp.*, 214 Ga.

_____
[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981)
(en banc), the Eleventh Circuit adopted as binding precedent all

App. 503, 504, 448 S.E.2d 248, 249 (1994). Some courts have recognized that a violation of HUD regulations may provide an equitable *shield* against foreclosure proceedings that do not comply with those regulations. *Mathews*, 724 S.E.2d at 202-03 (allowing borrowers to seek a declaration that foreclosure would be void based on the lender's failure to comply with HUD regulations); *accord Pfeifer v. Countrywide Home Loans, Inc.*, 150 Cal. Rptr. 3d 673, 698 (Cal. Ct. App. 2012) (same). But those courts did not hold that a borrower could recover damages based on a violation of the HUD regulations. In fact, the *Pfeifer* court specifically considered the issue and found that although the HUD regulations could support a claim for injunctive relief, a violation of the regulations does not support a claim for damages based on breach of contract or wrongful foreclosure. *Id.* at 698-99 & n.17; *see also, e.g., Mitchell v. Chase Home Fin. LLC*, Civil Action No. 3:06-CV-2099-K, 2008 WL 623395, at *3 (N.D. Tex. Mar. 4, 2008) (citing cases holding that HUD regulations create no private right of action for damages). For all of these reasons, the Court concludes that Bates may not base her breach of contract and attempted wrongful foreclosure claims on Chase's alleged failure to meet the HUD face-to-face interview requirements.

---

decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

C.    Claims Based on Failure to Send Foreclosure Notice

Bates also bases her breach of contract and attempted wrongful foreclosure claims on Chase's alleged failure to send adequate notice to Bates before the foreclosure sale scheduled for January 2012.  The Deed requires that if Chase invokes the power of sale, Chase must give a copy of the notice of sale to Bates via first class mail.  Deed ¶¶ 13, 18.  Bates acknowledges that Chase complied with that requirement by sending her a copy of the notice of sale for the scheduled February sale, which did not take place.  And even if the Deed required Chase to send a notice for the scheduled January sale that did not take place, Bates pointed to no evidence that she suffered damages because of Chase's failure to do so.  Therefore, the record does not support a breach of contract or attempted wrongful foreclosure claim based on Chase's failure to send Bates notice of the scheduled January sale that did not take place.

**II.  RESPA Claim**

Bates asserts claims under § 2605(e) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e), contending that Chase did not adequately respond to her December 22, 2011 and March 29, 2012 letters.  In both letters, Bates stated her belief that Chase had received and retained her September 2011 payment for $3,495.00 but had not applied it to

her account, and she detailed her attempts to make the $4,660.00 payment in November and December 2011.

Chase responded to the December 22, 2011 letter and explained that it returned the $3,495.00 check because the amount was not sufficient to cure the default. Chase further explained that it rejected the attempted payments for $4,660.00 because the funds were not sufficient to cure the default. Chase instructed Bates to contact its foreclosure attorney for a reinstatement quote. Bates contends that this response does not satisfy RESPA because Chase did not respond by crediting her account with the $3,495.00 payment. Notwithstanding Bates's current protestations to the contrary, Chase had no obligation to credit that amount to Bates's account. Bates's subjective view of her account status does not rebut the evidence that Chase rejected the September 2011 payment and sent Bates a refund check. Bates's RESPA claim based on the December 22, 2011 letter thus fails. The March 29, 2012 letter asks the same questions Chase already answered in response to the December 22, 2011 letter. The Court rejects Bates's suggestion that Chase is subject to RESPA liability for failing to respond to a letter that simply repeats questions to which Chase had already provided complete and correct responses.

**III. Trespass Claim**

Bates's trespass claim is based on the visits from Chase's property inspectors.  Bates acknowledges that the Deed permits Chase to inspect her property if the loan is in default.  As discussed above, the loan was in default.  Chase did not fabricate the default.  Rather, the default existed because Bates did not make timely mortgage payments.  Chase thus had the right to inspect the property and is not liable for trespass.

CONCLUSION

As discussed above, Bates's Motion for Partial Summary Judgment (ECF No. 60) is denied, and Chase's Motion for Summary Judgment (ECF No. 61) is granted.  Chase's Motion for Judgment on the Pleadings (ECF No. 44) and Chase's motion to amend its answer to add the affirmative defense of mortgage fraud (ECF No. 83) are terminated as moot.

IT IS SO ORDERED, this 23rd day of October, 2013.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE